UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:12-CV-00204-JHM

CPC LIVESTOCK, LLC, *et al.*                                    PLAINTIFFS

V.

FIFTH THIRD BANK, INC., *et al.*                               DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Abstention and Remand [DN 21].

Also before the Court is Plaintiffs' Motion for Enlargement of Page Limit for their Reply [DN 35].

Fully briefed, this matter is ripe for decision. For the following reasons, the motions are

**GRANTED**.

I. BACKGROUND

In August of 2004, Eastern Livestock Co., LLC ("Eastern Livestock"), a livestock brokerage

company with operations in eleven states, refinanced the bulk of its indebtedness through Defendant

Fifth Third Bank, Inc. ("Fifth Third"). Fifth Third and Eastern Livestock executed a credit

agreement and a security agreement, under which Fifth Third extended Eastern Livestock a

revolving credit line in the amount of $22.5 million. Fifth Third took Eastern Livestock's equipment,

livestock, inventory, bank accounts, and accounts receivable as collateral. Between 2004 and 2010,

Eastern Livestock regularly bought livestock from Plaintiffs, using checks drawn from its Fifth

Third account.[1]

Despite its Fifth Third credit line, Eastern Livestock was starved for cash. In an attempt to

_____

[1] Plaintiffs are various cattle producers, auction markets, and cattle dealers. According to Plaintiffs, in the weeks leading up to November 2, 2010, they entered into contracts or formed business expectancies to sell cattle to Eastern Livestock. (1st Amend. Compl. [DN 1-1] ¶¶ 37, 92.)

generate additional working capital, some of Eastern Livestock's officers and principals—namely, Defendants Darren Brangers, Grant Gibson, and Stephen McDonald—became involved in a check kiting scheme. Essentially, these officers and principals would issue checks to and from certain bank accounts belonging to Eastern Livestock's agents, owners, and associates, as well as to and from its accounts with Fifth Third. This effectively allowed the company to borrow additional funds while creating the appearance that it was both solvent and flourishing. According to Plaintiffs, Fifth Third became aware of this check kiting scheme as early as 2007, when its computer detection software began raising red flags concerning Eastern Livestock. But despite this awareness, Fifth Third chose to take no action regarding Eastern Livestock's accounts. Instead, it decided to collect millions of dollars in additional fees and interest under the $22.5 million revolving credit line.

Plaintiffs assert that thereafter, in 2010, the check kiting scheme became even more apparent and Fifth Third set in motion a plan to minimize its losses. According to Plaintiffs, Fifth Third knew that the peak of Eastern Livestock's annual cattle sales was in late October or early November. Thus, it knew that tens of millions of dollars worth of checks would be deposited into Eastern Livestock's account at Fifth Third–and that Eastern Livestock would have tens of millions of dollars worth of checks that were issued and outstanding. With this knowledge, Fifth Third laid in waiting. Then, on November 2, 2010, it froze Eastern Livestock's accounts and its entire cash flow, without notifying the company of its actions. After the account freeze, Eastern Livestock's business continued for days and Fifth Third continued clearing checks in Eastern Livestock's accounts. As a result, the accounts filled up with cash from the livestock transactions. Thereafter, claiming the deposits as "collateral," Fifth Third applied them to offset its exposure on the check kiting scheme. While this was ongoing, Plaintiffs continued to relinquish possession and control of their livestock to Eastern Livestock. In

2

exchange, Plaintiffs received checks from Eastern Livestock that Fifth Third later refused to honor.

On November 10, 2010, a receiver was appointed for Eastern Livestock. On December 6, 2010, an involuntary Chapter 11 bankruptcy petition was filed in the U.S. Bankruptcy Court for the Southern District of Indiana. All of the cattle that were part of Eastern Livestock's assets, including those sold by Plaintiffs, and the proceeds from the sale of those cattle, became part of the bankruptcy estate. Thereafter, on December 17, 2012, the trustee's Plan of Liquidation was confirmed. Under this plan, Eastern Livestock's assets are to be reduced to cash and distributed to its creditors. See *In re* Eastern Livestock Co., LLC, No. 10-93904 [DNs 1490, 1644] (Bankr. S.D. Ind. Dec. 17, 2012).

On November 2, 2012, Plaintiffs filed suit in the Allen Circuit Court against Fifth Third, as well as against Brangers, Gibson, and McDonald, who participated in the check kiting scheme. West Kentucky Livestock Market, LLC, which operated a stockyard known as the "Marion Facility," was also named as a defendant. In total, the complaint asserted nine causes of action against Defendants, including: conversion, unjust enrichment, and aiding and abetting fraud against Fifth Third; theft by deception against Brangers, Gibson, and McDonald; aiding and abetting theft by deception against Fifth Third; aiding and abetting Eastern Livestock's breach of trust relationship; tortious interference with Eastern Livestock's contractual and business relationships; and equitable accounting against West Kentucky Livestock Market.  However, this complaint and the summonses were not served on Defendants. (See Aff. of Michael J. Gartland [DN 36-2] ¶¶ 4–5 (noting that summonses were issued to, and retained by, Plaintiffs' counsel).) On November 26, 2012, Plaintiffs filed a First Amended Complaint, adding two plaintiffs to the action. This amended complaint and the summonses were served on Defendants. On December 12, 2012, Fifth Third removed this action

3

to federal court under 28 U.S.C. § 1441(a), asserting the existence of diversity, bankruptcy, and supplemental jurisdiction.

On December 28, 2012, Plaintiffs filed a Second Amended Complaint, without the Court's leave, in which they added another new plaintiff, expanded on the facts, and added Brangers, Gibson, and McDonald to Count III's aiding and abetting fraud claim. On January 9, 2013, Fifth Third filed an Amended Notice of Removal, asserting federal question jurisdiction as another basis for removal. Plaintiffs then filed a motion for remand to the Allen Circuit Court, contesting the existence of any type of federal jurisdiction. In the event the Court finds that it has bankruptcy jurisdiction, Plaintiffs request that the Court abstain from exercising such jurisdiction.

## II. DISCUSSION

On December 12, 2012, Fifth Third removed this action from state to federal court. Plaintiffs thereafter filed a motion for remand to the Allen Circuit Court. As the removing party, Fifth Third bears the burden of establishing federal jurisdiction. See Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 948–49 (6th Cir. 1999). "All doubts as to the propriety of removal are resolved in favor of remand." Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999).

As a threshold matter, the Court must determine the point at which to test federal jurisdiction. Plaintiffs argue that the Court must test federal jurisdiction against the Second Amended Complaint because Fifth Third filed its Amended Notice of Removal *after* that complaint was filed. According to Plaintiffs, the amended notice superseded the original, and the Court must test federal jurisdiction anew from its filing. Plaintiffs assert that this situation is analogous to courts testing jurisdiction at the filing of an amended complaint. See Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473–74 (2007) (noting that "when a plaintiff files a complaint in federal court and then voluntarily amends

4

the complaint, courts look to the amended complaint to determine jurisdiction"). Fifth Third counters

that the Court must instead test federal jurisdiction against the First Amended Complaint, as that

complaint was in effect on December 12, 2012 when the original notice was filed.

It is well-settled that when considering a motion to remand, a court must determine whether

it has subject matter jurisdiction "by examining the complaint *as it existed at the time of removal*."

Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 210 (6th Cir. 2004) (emphasis added); see Coyne,

183 F.3d at 492 (noting that when an action is removed on diversity, courts "must determine whether

complete diversity exists at the time of removal"). In the present case, the First Amended Complaint

was operative at the time of removal. Accordingly, the Court will consider it in determining whether

subject matter jurisdiction exists.[2] Plaintiffs have identified no cases which suggest that once a

notice of removal is amended, the Court should treat the initial notice of removal as if it were never

filed.

However, even if the Court were to analyze the Second Amended Complaint in determining

federal jurisdiction, its conclusions here would be the same given Magistrate Judge Brennenstuhl's

order entered February 15, 2013. (Order [DN 33].) Essentially, Plaintiffs ask the Court to analyze

the Second Amended Complaint to bolster their fraudulent joinder argument. As discussed below,

Fifth Third argues that Defendant Brangers, a non-diverse defendant, was fraudulently joined since

the claim against him in Count IV is time-barred. Plaintiffs wish to argue that regardless of the

---

[2] This decision is supported by case law. See, e.g., Howell v. Joffe, 478 F. Supp. 2d 1014, 1018
(N.D. Ill. 2006) (finding "no basis to conclude that defendants' amended notice of removal
superceded their initial notice" when the original notice was neither stricken nor withdrawn);
Harper, 392 F.3d at 210–11 (noting that subject matter jurisdiction is determined at the time of
removal and further noting that subsequently amending a complaint does not deprive a court of
jurisdiction).

proper limitations period for Count IV, Fifth Third still cannot show fraudulent joinder since the claim against Defendant Brangers in Count III of the Second Amended Complaint is not time-barred.[3] However, Magistrate Judge Brennenstuhl has held that Plaintiffs cannot assert Count III against Brangers. (Id. at 11.) Thus, the Court's analysis of fraudulent joinder will focus on Count IV, which is the same in the First and Second Amended Complaints.

## A. DIVERSITY JURISDICTION

Removal from state to federal court is proper for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . ." 28 U.S.C. § 1441(a). District courts have original jurisdiction of "civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." Id. § 1332(a). The Sixth Circuit has held that "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." Coyne, 183 F.3d at 493. To establish fraudulent joinder, a removing party "must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." Id. Here, to determine whether Fifth Third has met this burden, the Court must analyze Plaintiffs' claim against Defendant Brangers, the only non-diverse defendant in this action. This claim is found in Count IV of the First Amended Complaint.

In Count IV of the First Amended Complaint, Plaintiffs allege that Brangers, in violation of Kentucky's theft by deception statute, KRS § 514.040, "operated to obtain property of the Plaintiffs by deception with the intent to deprive Plaintiffs thereof by intentionally creating or reinforcing a false impression as to the following: (1) Eastern's compliance with the PSA; (2) Eastern's solvency;

[3] As noted above, Count III was not asserted against Brangers in the First Amended Complaint.

and (3) Eastern's intention to fully discharge its obligations to pay for the livestock under the PSA." (1st Amend. Compl. [DN 1-1] ¶ 158.) Plaintiffs also allege that they are entitled to damages for this violation under KRS § 446.070, which states that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." Kentucky courts have recognized that KRS § 446.070 was enacted "to codify common law negligence per se." St. Luke Hosp., Inc. v. Straub, 354 S.W.3d 529, 534 (Ky. 2011). The caption of Count IV states that this claim is for theft by deception.

In their Notice of Removal, Fifth Third contends that the applicable statute of limitations for Plaintiffs' claim against Defendant Brangers is a one-year statute found in KRS § 413.140(1)(j). This statute applies to "action[s] for the recovery of damages or the value of stolen property, against the thief or any accessory." KRS § 413.140(1)(j). According to Fifth Third, application of this statute is proper since Brangers allegedly stole Plaintiffs' cattle by deceiving them as to Eastern Livestock's solvency. Fifth Third highlights that Count IV's caption states that the claim is for *theft* by deception. Importantly, if KRS § 413.140(1)(j) applies, Plaintiffs' claim against Brangers would be time-barred, as Plaintiffs' complaint was not filed until November 2, 2012 and the claim in Count IV accrued *two* years earlier, on November 2, 2010. (Mem. of Law in Supp. of Pls.' Mot. for Abstention & Remand [DN 21] 15.) Further, Defendant Brangers would be deemed fraudulently joined. See Simpson v. GGNSC Admin. Servs., LLC, 2008 WL 817084, at *3 (E.D. Ky. Mar. 20, 2008) (holding that a defendant was fraudulently joined when the claim against her was barred by a statute of limitations).

Plaintiffs, by contrast, argue that KRS § 413.140(1)(j) is not the applicable limitations

7

period. Instead, Plaintiffs argue that the applicable period is either two years or five years. As to the two-year period, Plaintiffs rely on KRS § 413.125. This statute applies to "action[s] for the taking, detaining or injuring of personal property . . . ." KRS § 413.125. It is the applicable statute for negligence suits for damages to personal property. See Ingram Trucking, Inc. v. Allen, 372 S.W.3d 870, 873 (Ky. App. 2012) (applying KRS § 413.125 to a property damage claim arising from negligence during an automobile accident). Plaintiffs assert that application of this statute is proper because their personal property (i.e. cattle) was wrongfully taken. Plaintiffs also suggest that application of this statute is proper because their claim is truly one for negligence per se. While Plaintiffs concede that Count IV could have been captioned better, they insist that their reliance on KRS § 514.040, the theft by deception statute, was intended to provide a statutory standard of care. Further, since Plaintiffs are in the class of persons that KRS § 514.040 was intended to protect, their claim should be permitted to proceed. See Davidson v. Am. Freightways, Inc., 25 S.W.3d 94, 99–100 (Ky. 2000) (noting that negligence per se exists "only if the alleged offender has violated a statute and the plaintiff was in the class of persons which that statute was intended to protect"). As to the five-year period, Plaintiffs rely on KRS § 413.120(2). This statute applies to "action[s] upon a liability created by statute, when no other time is fixed by the statute creating the liability." KRS § 413.120(2). According to Plaintiffs, since their claim is brought under KRS § 446.070, which was enacted to codify common law negligence per se, and since that statute does not fix a time in which a party must commence an action, the limitations period is arguably five years.

To establish fraudulent joinder, a removing party "must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." Coyne, 183 F.3d at 493. An action in federal court must be remanded "if there is a colorable

8

basis for predicting that a plaintiff may recover against non-diverse defendants . . . ." <u>Id.</u> In other words, if "there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved," then it must be said that the joinder was proper and complete diversity is lacking. <u>Alexander</u>, 13 F.3d at 949. Notably, when making a determination regarding fraudulent joinder, a federal court must resolve "disputed questions and fact and ambiguities in the *controlling* state law . . . in favor of the nonremoving party." <u>Id.</u> (quotation omitted) (emphasis in original).

In this case, the Court finds that Fifth Third has not satisfied its burden of proving fraudulent joinder. The Court finds that Fifth Third has failed to present sufficient evidence showing that Plaintiffs could not have established a cause of action against Brangers under Kentucky law. While Fifth Third broadly and unequivocally states that the one-year period in KRS § 413.140(1)(j) applies, it seems to the Court that the two-year period in KRS § 413.125 arguably applies. While the caption of Count IV states that Plaintiffs' claim is for theft by deception, Count IV seeks damages under KRS § 446.070, which was enacted to codify negligence per se. Fifth Third has cited no cases in which a Kentucky court has applied KRS § 413.140(1)(j) to a claim made under KRS § 446.070 seeking damages for injury to personal property. Moreover, Fifth Third does not explain why it is unreasonable for Plaintiffs to argue that a claim under KRS § 446.070 should not be governed by the two-year limitations period in KRS § 413.125, which is applicable to other negligence claims for damage to personal property. Indeed, because both statutes arguably apply, the Court will construe the law in favor of Plaintiffs, the non-removing parties.

In support of its position, Fifth Third suggests that the Court must apply the one-year statute because courts must give force to a statute's plain language. <u>See</u> <u>Cromwell Louisville Assocs. v. Commw.</u>, 323 S.W.3d 1, 6 (Ky. 2010) (noting that "[d]isregarding the plain language of the statute

9

and trying to take part of another statute to extend the time line only perpetuates the absurdity"); see also Farm Credit Bank of Louisville v. U.S. Mineral Prods. Co., 864 F. Supp. 643, 649 (W.D. Ky. 1994) (interpreting the language of competing statutes of limitation). Fifth Third suggests that due to this rule, the Court should not ignore how closely the language of KRS § 413.140(1)(j) fits Plaintiffs' claim. In support of its position, Fifth Third maintains that if KRS § 413.140(1)(j) does not apply, it would be difficult to imagine any cause of action to which it would. However, the Court finds Fifth Third's argument unpersuasive. In Count IV, Plaintiffs arguably assert a negligence per se claim under KRS § 446.070, and courts have held that KRS § 413.125 applies to negligence claims involving personal property. Further, it appears to the Court that there is no risk that KRS § 413.140(1)(j) would be rendered meaningless if a court were to determine that KRS § 413.125 applies. After all, KRS § 413.140(1)(j) has been applied in cases where KRS § 446.070 was not asserted as a basis for recovery. See, e.g., Ball v. Stalnaker, 517 F. Supp. 2d 946, 947–48 (E.D. Ky. 2007) (recounting the application of KRS § 413.140(1)(j) in an underlying case involving claims of fraud, conversion, and theft). The statutes' plain language simply conflicts, giving rise to two plausible, alternative applications.

Fifth Third next contends that the Court must apply the one-year statute because where two statutes of limitations arguably apply, a "specific statute of limitation preempts a general statute of limitation." Boyd v. C & H Transp., 902 S.W.2d 823, 824 (Ky. 1995). According to Fifth Third, under this rule, even assuming that the two-year statute could apply, KRS § 413.140(1)(j) governs since it more specifically applies to claims brought against a thief for the recovery of damages. But Kentucky courts have also held that "a longer period of limitations should prevail where two statutes are arguably applicable." Troxell v. Trammel, 730 S.W.2d 525, 528 (Ky. 1987). Accordingly, there

10

is ambiguity under Kentucky law and the Court must resolve this ambiguity in favor of Plaintiffs. As a result, the Court concludes that Defendant Brangers was not fraudulently joined. It follows that the Court lacks diversity jurisdiction and Fifth Third's removal on that ground was improper.[4]

As a final matter, Fifth Third argues that Plaintiffs' claim against Defendant Brangers is time-barred even if the two-year period of KRS § 413.125 applies. In support, Fifth Third notes that "the statute of limitations runs until a summons is actually issued." Bradford v. Bracken Cnty., 767 F. Supp. 2d 740, 745 (E.D. Ky. 2011). Fifth Third then states that it "appears that no summons was issued with Plaintiffs' November 2, 2010 Complaint." (Def.'s Mem. in Opp. to Remand or Abstention [DN 32] 16.) According to Fifth Third, summonses were not issued until November 30, 2012, after the First Amended Complaint was filed. Because this is twenty-eight days after a two-year statute would have run, Brangers was fraudulently joined even if KRS § 413.125 applies.

Plaintiffs counter that the Allen Circuit Clerk did, in fact, issue the summonses on November 2, 2012. However, the summonses were mailed to Plaintiffs' counsel, at their request, instead of to Defendants. According to Plaintiffs' counsel, this was done because Plaintiffs contemplated that an amended complaint would be filed soon thereafter to name additional plaintiffs. (See Aff. of Michael J. Gartland [DN 36-2] ¶¶ 4–5.) Plaintiffs' counsel asserts that Plaintiffs wanted to "avoid spending time and resources serving two complaints within a matter of weeks," when Plaintiffs knew that "the

_____

[4] Due to this conclusion, the Court finds it unnecessary to delve into a lengthy discussion regarding the five-year statute found in KRS § 413.120(2). With that said, the Court wishes to briefly note that the five-year statute is likely inapplicable to Plaintiffs' claim. See Redmond v. Sud-Chemie Inc. Ret. Plan for Union Emps., 547 F.3d 531, 537–39 (6th Cir. 2008) (noting that KRS § 413.120(2) only applies if a statute creates a theory of liability that was unknown at common law and further noting that because negligence was available at common law, "Kentucky courts have declined to apply KRS § 413.120(2) to negligence claims"); see also Toche v. Am. Watercraft, 176 S.W.3d 694, 698 (Ky. App. 2005) (holding that KRS § 413.120(2) is not the statute of limitation for negligence per se claims brought under KRS § 446.070).

only difference between the Original Complaint and Amended Complaint would be the identification of additional Plaintiffs." Plaintiffs' counsel further asserts that "Plaintiffs certainly were not trying to take advantage of, deceive, or be underhanded as to any of the Defendants." (Id. ¶ 10.)

CR 3.01 states that a "civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith." CR 3.01. "The rule seems to be that if, when the summons was issued, the plaintiff had a bona fide, unequivocal intention of having it served presently or in due course or without abandonment, the summons was issued in good faith." Roehrig v. Merchs. & Buisnessmen's Mut. Ins. Co., 391 S.W.2d 369, 371 (Ky. 1965). Good faith "can be, and usually is, something less than perfection or complete accuracy," and above all, "it means not to take advantage of, not to deceive, not to be underhanded." Id. at 370. In this case, Plaintiffs' counsel accepted the issued summonses and retained them. According to counsel, this was done because Plaintiffs contemplated that an amended complaint would be filed and counsel wanted to avoid spending time and resources serving two complaints in a short period of time. The Court finds that these facts fail to show that the summonses were not issued in good faith.

In the case of Gibson v. EPI Corp., a plaintiff brought a premises liability action against a building owner and provider of security services. 940 S.W.2d 912, 912 (Ky. App. 1997). On the date that the suit was filed, the clerk's office issued a summons. The plaintiff's counsel then accepted the summons and retained it himself. Id. at 912–13. Notably, settlement negotiations were ongoing when Plaintiffs' counsel retained the summons. Two and one-half months after the limitations period had expired, when no settlement had been reached, the summons was served. Id. at 913. The Kentucky Court of Appeals found that the "intention to go forward with the service of process was not reached until the limitation period had expired and thus the action was not commenced within the limitation

period." Id. (quoting Whittinghill v. Smith, 562 S.W.2d 649, 650–51 (Ky. App. 1977)). Here, though, the Court finds that Plaintiffs had the requisite intent to serve the summonses in due course. At no point does it appear that Plaintiffs intended to abandon service. Unlike the plaintiff in Gibson, who held the summons so as to not disrupt settlement negotiations, it seems that Plaintiffs were not trying to take advantage of Defendants but were instead trying to save costs. The Court finds that these facts fail to show a lack of good faith. The Court concludes that Defendant Brangers was not fraudulently joined.

### B. FEDERAL QUESTION JURISDICTION

Fifth Third argues that removal was proper since the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Section 1331 states that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331. The Supreme Court has explained that a plaintiff's claim may arise under federal law if the plaintiff pleads: (1) a cause of action created by federal law or (2) "state-law claims that implicate significant federal issues." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). Here, Fifth Third argues that the Court has jurisdiction since Plaintiffs' claims impact significant federal issues, requiring a court to both interpret and apply the Packers and Stockyards Act ("PSA").

The Sixth Circuit has suggested that for a state-law claim to implicate a significant federal issue: "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." Mikulski v. Centerior Energy Corp., 501 F.3d 555, 568 (6th Cir. 2007). The Court considers each factor below.

###### 1.      Disputed Federal Issues

Plaintiffs acknowledge that to dispose of their claims against Defendants, it will be necessary to interpret and apply certain PSA provisions and regulations. (Mem. of Law in Supp. of Pls.' Mot. for Abstention & Remand [DN 21] 21.) Moreover, Plaintiffs acknowledge that Fifth Third will likely dispute the proper interpretation of these provisions and regulations. (Id.) Therefore, the Court finds that there are disputed federal issues in this case. A close analysis of Plaintiffs' complaint, however, reveals that the extent of these issues is quite narrow. Indeed, contrary to Fifth Third's suggestion, the Court finds that there is truly only one disputed federal issue requiring an interpretation of the PSA—namely, whether any trust relationship under the PSA existed between Eastern Livestock and Plaintiffs. This issue is relevant to Count VI of Plaintiffs' complaint, which alleges that Fifth Third aided and abetted Eastern Livestock's breach of their trust relationships.

Fifth Third argues that Plaintiffs' claims present numerous additional issues regarding the PSA. With respect to the conversion claim in Count I, Fifth Third asserts that the claim requires a determination that Plaintiffs' retained rights to their livestock, and any proceeds from that livestock, are superior to other parties under the PSA. However, as Plaintiffs correctly note, Count I does not require such a determination. Instead, Count I focuses on whether Plaintiffs' rights were subrogated and whether Eastern Livestock's rights were void or voidable. These questions will depend on the application of Kentucky's Commercial Code—not the PSA. Next, as to the unjust enrichment claim in Count II, Fifth Third asserts that the claim requires a determination of whether Fifth Third knew that Eastern Livestock was operating outside of the PSA's mandates. However, the Court finds that the crux of Count II is not on the PSA's mandates or on what they require for compliance. Instead, it is on whether Fifth Third had knowledge of Eastern Livestock's insolvency due to its check kiting

computer detection software yet nevertheless ignored the software for its own gain. Whether Fifth Third had such knowledge will be a fact-intensive determination that is not dependent on the PSA.

With respect to Plaintiffs' fraud claim in Count III, Fifth Third asserts that the claim requires determinations of whether Eastern Livestock was a dealer or market agency; whether it held itself out to be solvent under the PSA; whether its issuance of checks was a misrepresentation; whether it was insolvent under the PSA; and whether checks issued to Plaintiffs were trust fund payments. However, the Court finds that an analysis of Count III reveals that its focus is whether the issuance of checks by Eastern Livestock constitutes a misrepresentation for a Kentucky common law fraud claim. Even if a court were to discuss PSA provisions in connection with this determination, such discussions would be brief. It cannot be disputed that: (1) solvency is a requirement under 7 U.S.C. § 204; (2) Eastern Livestock was a PSA registrant that was bound to operate in conformity with this requirement; and (3) Eastern Livestock's liabilities exceeded its assets, causing the company to go bankrupt. At its core, then, the only issue that *may* require an interpretation of the PSA in Count III is whether Eastern Livestock's issuance of checks constitutes a misrepresentation because it was an insolvent PSA registrant that was required to be solvent. The focus, though, will be on state law and on what constitutes a misrepresentation thereunder.

Fifth Third next argues that Plaintiffs' theft by deception (negligence per se) claim in Count IV and Plaintiffs' aiding and abetting theft by deception claim in Count V require determinations of whether Eastern Livestock was in compliance with the PSA; whether Eastern Livestock was solvent under the PSA; and whether Eastern Livestock's issuance of checks showed an intent to comply with the PSA. However, the Court finds that Fifth Third has embellished the extent of the PSA issues involved here. Defendants Brangers, Gibson, and McDonald pled guilty to theft by

15

deception. Thus, the only question as to Counts IV and V is whether Defendants' actions give rise to civil damages under a negligence per se framework. This does not require any application or interpretation of the PSA. Further, even if a court needs to refer to the PSA, this does not mean that its regulations are essential to Counts IV and V. See Commw. of Ky. *ex rel.* Conway v. Daymar Learning, Inc., 2012 WL 1014989, at \*4 (W.D. Ky. Mar. 22, 2012) (finding that the Higher Education Act was not essential to a plaintiff's Kentucky Consumer Protection Act claims); Commw. of Ky. *ex rel.* Gorman v. Comcast Cable of Paducah, Inc., 881 F. Supp. 285, 288 (W.D. Ky. 1995) (noting that "the reference to a 'violation' of the federal statute in the state law claim can only be considered to be an assertion that the failure to conform with the federal rule is evidence that the state . . . law has been violated" and that "use of the federal regulation as a standard in a state law claim is not unusual").

### 2.     Substantial Federal Interest

To determine whether a federal interest is substantial, the Sixth Circuit has held that courts should consider four factors:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

Mikulski, 501 F.3d at 570. Importantly, "no single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." Id. Here, the Court finds that the factors weigh against characterizing the federal interest as substantial.

*Federal Agency.* Fifth Third argues that the first factor supports a finding that a substantial federal interest is at stake because the case includes a federal agency, GIPSA, which administers the

PSA. According to Fifth Third, GIPSA requires regulated entities to file a bond with them to secure their financial obligations, see United States v. Haun, 124 F.3d 745, 748 (6th Cir. 1997), and in this case, many of the plaintiffs filed claims against Eastern Livestock's GIPSA bond to recover the value of the cattle that they sold to Eastern Livestock. Since this action's resolution may determine whether these plaintiffs can continue to pursue their GIPSA claims, a federal agency is involved. See, e.g., Coventry Health Care, Inc. v. Caremark, Inc., 705 F. Supp. 2d 921, 929 (M.D. Tenn. 2010) (holding that "the interests of a federal agency, though not directly involved, are nonetheless implicated" when the defendant would have a right to recoup funds from the Department of Defense if the plaintiff prevailed).

However, the Court finds that Fifth Third's argument overlooks the facts. In 2011, the GIPSA bond proceeds were turned over to Eastern Livestock's bankruptcy trustee. (See Blog Entry [DN 36-3].) Thus, the trustee—not GIPSA—is administering the bond claims. Moreover, the administration of the bond claims will not have a financial impact on GIPSA, as GIPSA will not be responsible for claims that exceed the bond's penal amount. In other words, the government's wallet will not be affected. The case is thus inapposite to Coventry Health Care, Inc. The first factor supports Plaintiffs.

*Importance of Federal Issue.* Fifth Third argues that the second factor supports a finding that a substantial federal interest is at stake because Plaintiffs' claims impact a comprehensive regulatory scheme. Haun, 124 F.3d at 748 (noting that Congress passed the PSA to ensure that it "established a pervasive regulatory scheme"). According to Fifth Third, the PSA's comprehensiveness shows the importance of the federal issues involved. Additionally, Fifth Third highlights that the PSA provides a private remedy for individuals who are harmed by PSA violations pursuant to 7 U.S.C. § 209(a).

See Cent. Trust Co. v. B & L Leasing, 669 F. Supp. 828, 830 (S.D. Ohio 1987) (noting that § 209 "explicitly creates such a right for persons injured as a result of a violation of the [PSA]"). According to Fifth Third, the existence of a private remedy shows that the federal question is important. Cf. Eastman v. Marine Mech. Corp., 438 F.3d 544, 552 (6th Cir. 2006) (holding that "Congress' withholding a private right of action from [a] statute[] is an important signal to its view of the substantiality of the federal question involved").

But as discussed above, the main federal issue here is whether a trust relationship under the PSA existed between Eastern Livestock and Plaintiffs. This concerns a mere interpretation of PSA regulations. Like the Sixth Circuit recognized in Mikulski, that is not enough to make the issue "important" for purposes of the substantial-federal-question doctrine. 501 F.3d at 571. The issue does not challenge the PSA's constitutionality, as was true in Smith v. Kansas City Tile & Trust Co., 255 U.S. 180, 201 (1921). Moreover, it does not implicate the government's financial interests, as was true in Coventry Health Care, Inc., 705 F. Supp. 2d at 930. The second factor supports Plaintiffs.

Case's Resolution. Fifth Third argues that the third factor supports a finding that a substantial federal interest is at stake because Plaintiffs' claims will fail if they cannot establish that a trust relationship existed between Eastern Livestock and Plaintiffs. However, in Mikulski, the Sixth Circuit found that similar issues would not be dispositive of the case. According to the Sixth Circuit, if the federal issues were resolved in favor of the plaintiffs, they would still have to prove other elements to prevail. 501 F.3d at 571. Similarly, if the federal issues were resolved in favor of the defendant, the plaintiffs could still possibly prevail by demonstrating "some other misrepresentation or breach of contract" aside from the non-compliance with federal law. Id. The same can be said in

18

this case. If Plaintiffs cannot establish that a trust relationship existed between Eastern Livestock and Plaintiffs under the PSA, they could still prevail by demonstrating that a trust relationship existed separate and apart from the PSA. Therefore, the resolution of any PSA issue "may, but will not necessarily, conclude the action." See id. The third factor supports Plaintiffs.

*Impact on Other Cases.* Fifth Third argues that the fourth factor supports a finding that a substantial federal interest is at stake because a decision on any federal question would affect other cases, impacting entities that are regulated under the PSA. The Court finds, however, that a state court's decision on any federal issues in this case will not control numerous other cases. The issue of whether a trust relationship under the PSA existed between Eastern Livestock and Plaintiffs will necessarily be a fact-intensive determination. Moreover, this issue will be determined in the context of state-law claims. As such, the Court finds that any decision regarding the PSA would be isolated to the facts of this case. See Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 700–01 (2006) (finding that a federal interest was not substantial where the claim was "fact-bound and situation-specific" rather than "a nearly 'pure issue of law'"). The fourth factors supports Plaintiffs.

*Summary of Factors.* In sum, then, the four substantiality factors identified in Mikulski point toward a finding that the "federal interest in this case is not so substantial that it compels a finding that these traditional state law claims actually 'arise under' federal law . . . ." 501 F.3d at 572. After all, the "mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction, either originally or on removal." Id. at 565.

### 3. Balance of Federal and State Judicial Responsibilities

Under the final step of the substantial federal question inquiry, the Court must "inquire into the risk of upsetting the intended balance by opening the federal courts to an undesirable quantity

19

of litigation." <u>Mikulski</u>, 501 F.3d at 573. Fifth Third argues that the risk of opening up federal courts to litigation is small because the enforcement of the PSA is a federal prerogative. <u>See</u> <u>United States v. City of Loveland</u>, 621 F.3d 465, 472 (6th Cir. 2010) (finding that the district court's exercise of jurisdiction "would not open the floodgates of litigation that might overwhelm the federal courts," as federal courts "are already charged with enforcing the Clean Water Act"). Fifth Third also argues that state court application of the PSA is rare since federal courts have exclusive jurisdiction over actions seeking to enforce the PSA under 7 U.S.C. § 209(b)(2). But as Plaintiffs correctly note, the PSA does not provide a cause of action against an entity, like Fifth Third, who is not subject to the PSA, nor does it offer secondary liability under the circumstances of this case. <u>See</u> 7 U.S.C. § 209(a).

The Court finds that this absence of secondary liability "suggests that Congress did not intend for federal courts to exercise jurisdiction." <u>PremierTox, Inc. v. Ky. Spirit Health Plan, Inc.</u>, 2012 WL 1950424, at *7 (W.D. Ky. May 30, 2012). Moreover, contrary to Fifth Third's statement, state court application of the PSA is not rare. Numerous state court cases exist that interpret and apply the PSA in the context of state-law claims. <u>See, e.g.</u>, <u>Nat'l Bank of Glenrock v. O'Neal</u>, 849 P.2d 711 (Wyo. 1993) (interpreting various PSA provisions in a trust fund dispute); <u>Commercial Bank at Alma v. Hales</u>, 665 S.W.2d 857 (Ark. 1984) (interpreting PSA provisions in the context of a state-law conversion claim); <u>Farmers State Bank v. Stewart</u>, 454 S.W.2d 908 (Mo. 1970) (same). Thus, the Court finds that by exercising jurisdiction over this case, it would risk upsetting the intended balance between federal and state courts. Plaintiffs' claims do not impact significant federal issues. It follows that the Court lacks federal question jurisdiction. Fifth Third's removal on that ground was improper.

20

## C. BANKRUPTCY JURISDICTION

Fifth Third argues that removal was also proper since the Court has bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334. Section 1334(b) states in pertinent part that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Fifth Third argues that the Court has jurisdiction because Plaintiffs' claims "arise under" the Bankruptcy Code or, alternatively, because the claims are "related to" Eastern Livestock's pending bankruptcy case.

Essentially, § 1334 "lists four types of matters over which the district court has jurisdiction: (1) 'cases under title 11,' (2) 'proceedings arising under title 11,' (3) proceedings 'arising in' a case under title 11, and (4) proceedings 'related to' a case under title 11." Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1141 (6th Cir. 1991). "The first category refers merely to the bankruptcy petition itself, filed pursuant to 11 U.S.C. §§ 301, 302, or 303." Id. As this action is not the bankruptcy petition, there is no jurisdiction under the first category. The Sixth Circuit has held:

> For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between the second, third, and fourth categories (proceedings "arising under," "arising in," and "related to" a case under title 11). These references operate conjunctively to define the scope of jurisdiction. Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least "related to" the bankruptcy.

Id. (internal citations omitted).

The Sixth Circuit has adopted an expansive definition of a "related to" proceeding that was first articulated by the Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984). See id. at 1142. Under this definition, a proceeding is "related to" a bankruptcy whenever its outcome "could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc., 743

21

F.2d at 994 (emphasis omitted). But the Sixth Circuit has created an exception to this rule, recognizing that "situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement." Robinson v. Mich. Consol. Gas Co., 918 F.2d 579, 583 (6th Cir. 1990).

 The Court finds that the instant case is "related to" Eastern Livestock's bankruptcy because its outcome could conceivably impact the bankruptcy estate. All but six of the named Plaintiffs have filed proofs of claim with the bankruptcy estate. To the extent that these Plaintiffs are successful, their claims against the bankruptcy estate will necessarily be reduced or extinguished so that they will not receive a double recovery. See Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 581 (6th Cir. 1994) (finding a double recovery impermissible, as it is "common wisdom that an injured party may recover damages only for the actual loss he suffered and no more"). In similar cases, courts have found that such a conceivable effect satisfies the "related to" threshold for jurisdiction. See Cloyd v. Fifth Third Bank, Inc., 2012 WL 1906481, at *6 (W.D. Ky. May 25, 2012); see also Omega Tool Corp. v. Alix Partners, LLP, 416 B.R. 315, 320 (E.D. Mich. 2009) (finding "related to" jurisdiction where a plaintiff's claim against the bankruptcy estate would be reduced by any amount recovered against a third-party defendant for the same injuries); Randall & Blake, Inc. v. Evans (In re Canion), 196 F.3d 579, 586–87 (5th Cir. 1999) (collecting cases for the proposition that "a claim between two non-debtors that will potentially reduce the bankruptcy estate's liabilities produces an effect on the estate sufficient to confer 'related to' jurisdiction"). The Court agrees that the potential reduction in Eastern Livestock's bankruptcy estate due to the satisfaction of Plaintiffs' claims by Fifth Third is sufficient to confer the Court with "related to" bankruptcy jurisdiction.

 Moreover, the Court finds that it has jurisdiction over all Plaintiffs—not just those who filed

proofs of claim with the bankruptcy estate. As Fifth Third correctly highlights, if any of the Plaintiffs recover against Fifth Third, this recovery will affect the liabilities of Eastern Livestock's bankruptcy estate by increasing Fifth Third's claims for indemnification and contribution. As the Sixth Circuit has explained, "[c]laims for indemnification and contribution . . . obviously would affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as [the debtor's] ability to resolve its liabilities . . . ." Lindsey v. O'Brien, Tanski, Tanzer & Young Health Providers of Conn. (*In re* Dow Corning Corp.), 86 F.3d 482, 497 (6th Cir. 1996). Also, "[t]he potential for [a debtor] being held liable to [a non-debtor defendant] in claims for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy." Id. In this case, Eastern Livestock agreed to indemnify Fifth Third for all claims that might arise out of business conducted pursuant to the credit agreement. (Excerpt of Credit Agreement [DN 1-2] 6.) This provision makes it more likely that Eastern Livestock would be held liable for all damages recovered by Plaintiffs in this action. See *In re* Wolverine Radio Co., 930 F.2d at 1143 (finding "related to" jurisdiction where there was an indemnification agreement between the defendant and debtor despite the agreement's contingent nature). Therefore, the Court finds that it has "related to" jurisdiction under 28 U.S.C. § 1334(b) with respect to all of the Plaintiffs.

### D. MANDATORY ABSTENTION

Notwithstanding the Court's finding that bankruptcy jurisdiction exists, Plaintiffs argue that the Court must abstain from hearing the case under 28 U.S.C. § 1334(c)(2). This statute provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the

23

district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). "For mandatory abstention to apply, a proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding." *In re* Dow Corning Corp., 86 F.3d at 497.

*State Law Basis.* The Court finds that the first element in the analysis is satisfied because the only claims in Plaintiffs' complaint are based on Kentucky law. Specifically, the complaint includes state-law claims for conversion, unjust enrichment, aiding and abetting, tortious interference, fraud, and theft by deception (under KRS § 446.070). Fifth Third argues that most of Plaintiffs' claims arise under the PSA, rather than state law. However, as discussed above, the Court finds that Plaintiffs' claims do not raise substantial federal questions and do not arise under the PSA. Instead, the claims will be decided under Kentucky's state-law principles.

*Federal Jurisdictional Basis.* The Court finds that the second element in the analysis is also satisfied because the Court has already found that there is no diversity jurisdiction under 28 U.S.C. § 1332(a)(1) or federal question jurisdiction under 28 U.S.C. § 1331. Fifth Third argues that this element is not satisfied because Plaintiffs have failed to establish that the Court would not have an independent basis for jurisdiction over the claims that it removed under 28 U.S.C. § 1452(a). Section 1452(a) provides that a party "may remove any claim," and Fifth Third argues that because Plaintiffs concede that they are diverse with Fifth Third, and that the amount in controversy exceeds $75,000, Plaintiffs cannot dispute that they could have commenced their claims against Fifth Third in federal court under 28 U.S.C. § 1332. However, in this case, Fifth Third did not merely remove the discrete claims against it. Instead, it opted to remove the entire case. As to the case in its entirety, there is

24

no diversity jurisdiction because of Defendant Brangers, nor is there federal question jurisdiction. The Court notes, however, that to the extent that Fifth Third is correct, it is of no matter. As discussed below, permissive abstention under 28 U.S.C. § 1334(c)(1) is warranted in this case.

*State Forum Commencement.* Additionally, the Court finds that the third element in the analysis is satisfied, as the lawsuit was commenced in a state forum of appropriate jurisdiction. Prior to its removal to this Court, the action was pending in the Allen Circuit Court.

*Timely Adjudication.* The Court finds that the fourth element in the analysis is also satisfied, as Plaintiffs have attached an affidavit from the Allen Circuit Clerk attesting to the court's openings and availability in 2013 and 2014. (Aff. of Todd B. Calvert [DN 21-2] ¶¶ 1–4.) Fifth Third argues that despite this affidavit, Plaintiffs have not shown that the action is capable of timely adjudication in state court because venue in Allen County is not proper. However, as Plaintiffs correctly note, this argument is off-point. The only court to which this action could be remanded is the Allen Circuit Court, and the clerk's affidavit makes it clear that the action is capable of timely adjudication there. This not the proper forum for Fifth Third to raise any argument regarding proper state-court venue.

*Non-Core Proceeding.* Finally, the Court finds that the fifth element in the analysis is satisfied. Whether a proceeding is "core" or "non-core" depends on whether it "arises under" title 11, "arises in" a title 11 case, or is "related to" a title 11 case. Proceedings that "arise under" title 11 or "arise in" a title 11 case are deemed "core." Proceedings that are merely "related to" a title 11 case are deemed "non-core." Amedisys, Inc. v. Nat'l Century Fin. Enters., Inc. (*In re* Nat'l Century Fin. Enters., Inc.), 423 F.3d 567, 574 (6th Cir. 2005). The distinction between the different types of proceedings has been outlined by the Sixth Circuit:

> The phrase "arising under title 11" describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11, and "arising in"

25

> proceedings are those that, by their very nature, could arise only in bankruptcy cases. Conversely, if the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of the bankruptcy, then it is not a core proceeding.

_In re_ Wolverine Radio Co., 930 F.2d at 1144 (internal citations omitted). While the terms "core" and "non-core" are not defined by statute, Congress has enumerated a list of fifteen proceedings that qualify as "core" under 28 U.S.C. § 157(b)(2) to aid in the determination.

Fifth Third contends that this case is a "core" proceeding because it "arises under" title 11. According to Fifth Third, this case seeks a determination of the validity, extent, or priority of liens, and cases seeking such determinations are listed "core" proceedings under 28 U.S.C. § 157(b)(2)(K). In support, Fifth Third relies on Plaintiffs' conversion claim, arguing that it makes the action "core" since Plaintiffs dispute the validity of any lien held by Fifth Third and argue that their rights in the cattle are superior. The Court disagrees. Plaintiffs' conversion claim depends on whether Fifth Third wrongly exerted dominion over Plaintiffs' property in a way that was inconsistent with Plaintiffs' rights. To succeed on this claim, Plaintiffs do not need to show that Fifth Third's lien was invalid. See Meade v. Richardson Fuel, Inc., 166 S.W.3d 55, 58 (Ky. App. 2005) (stating the elements of a conversion claim). Moreover, if any priority determination is required here, it will _not_ be a priority determination with respect to the bankruptcy estate's property. The bankruptcy trustee has released all claims against Fifth Third in the bankruptcy case, including any claim that the estate could have asserted against Fifth Third to recover the allegedly converted livestock proceeds. As such, the Court finds that this action does not "arise under" title 11. See Allis-Chalmers Corp. v. Borg-Warner Acceptance Corp. (_In re_ Dr. C. Huff Co., Inc.), 44 B.R. 129, 134 (Bankr. W.D. Ky. 1984) ("Section 157(b)(2)(K) must be read as empowering us _only_ to make 'determinations of the validity, extent, or priority of liens upon property of the estate.' Otherwise, we would be asserting a form of

jurisdiction *ferae naturae*, capable of rampant adjudication of property rights wherever found and by whomever owned.") (Emphasis in original.)

Likewise, the Court finds that this action is not one that "arises in" a case under title 11. For a proceeding to "arise in" a case under title 11, it must be one that by its very nature could not exist outside of the bankruptcy context. <u>In re</u> <u>Wolverine Radio Co.</u>, 930 F.2d at 1144. "The category of proceedings 'arising in' bankruptcy cases 'includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens.'" <u>Stoe</u> <u>v. Flaherty</u>, 436 F.3d 209, 216 (3d Cir. 2006). This is a limited category of proceedings. <u>Wood v.</u> <u>Wood</u> (<u>In re</u> <u>Wood</u>), 825 F.2d 90, 95 n.25 (5th Cir. 1987) ("Numerous courts have noted the necessity of defining core proceedings narrowly . . . .")

Plaintiffs' complaint contains several state-law claims which basically allege that Fifth Third froze Eastern Livestock's account without proper notice, thereby gaining possession and control of Plaintiffs' livestock through the assertion of its first priority lien. As such, this is a proceeding that could exist regardless of the presence of a bankruptcy action. <u>See</u> <u>Cloyd</u>, 2012 WL 1906481, at *10 (reaching this conclusion on identical facts). "It is simply a state [conversion] action that, had there been no bankruptcy, could have proceeded in state court." <u>See</u> <u>In re</u> <u>Wood</u>, 825 F.2d at 97. Thus, this proceeding is not one that "arises in" a title 11 case. Furthermore, the parties are each non-debtors, and the Sixth Circuit has found that "suits between third parties that affect the administration of the title 11 cases are typically considered to fall within the 'related to' category." <u>In re</u> <u>Wolverine Radio Co.</u>, 930 F.2d at 1145. Accordingly, this proceeding neither "arises under" title 11 nor "arises in" a case under title 11. Since it is only "related to" Eastern Livestock's bankruptcy, it is "non-core." Since the Court has found that Plaintiffs have demonstrated the

27

presence of all five abstention elements, mandatory abstention is appropriate and jurisdiction under 28 U.S.C. § 1334 is lacking. Further, having found no diversity, federal question, or bankruptcy jurisdiction, the Court finds that there is no basis to support a finding of supplemental jurisdiction. See 28 U.S.C. § 1367.

### E. PERMISSIVE ABSTENTION

Even if the Court were to determine, as Fifth Third argues, that Plaintiffs have failed to show the presence of all five abstention elements, the Court finds that permissive abstention is warranted. Plaintiffs have the burden of establishing that permissive abstention is warranted under 28 U.S.C. § 1334(c)(1). See Commercial Fin. Servs., Inc. v. Bartmann (*In re* Commercial Fin. Servs., Inc.), 251 B.R. 414, 429 (Banrk. N.D. Okla. 2000). Section 1334(c)(1) states that "in the interest of justice, or in the interest of comity with State courts or respect for State law," a district court may abstain "from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).

In determining whether permissive abstention is warranted, courts often consider: (1) the extent to which state law issues predominate over bankruptcy issues; (2) the unsettled nature of the applicable state law; (3) the jurisdictional basis; (4) the impact on the efficient administration of the estate; (5) the degree of relatedness to the bankruptcy case; (6) the presence of a related proceeding commenced in state court or other non-bankruptcy court; and (7) the existence of forum shopping. See Beneficial Nat'l Bank U.S.A. v. Best Reception Sys., Inc. (*In re* Best Reception Sys., Inc.), 220 B.R. 932, 953 (Bankr. E.D. Tenn. 1998); Armstrong v. Trans-Serv. Logistics, Inc. (*In re* Trans-Serv. Logistics, Inc.), 304 B.R. 809, 812 (Bankr. S.D. Ohio 2004). The "primary determinant for the exercise of discretionary abstention is whether there exists unsettled questions of state law." *In re*

28

Dow Corning Corp., 113 F.3d at 571. Also, "federal courts should be hesitant to exercise jurisdiction when 'state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." Citibank v. White Motor Corp. (*In re White Motor Credit*), 761 F.2d 270, 274 (6th Cir. 1985) (citation omitted).

In this case, the Court finds that the factors weigh in favor of abstention and remand to the Allen Circuit Court. First, as discussed above, state-law issues substantially predominate. Contrary to Fifth Third's contention, Plaintiffs' claims do not present myriad federal law issues. While some of Plaintiffs' claims may require the interpretation and application of the PSA, Fifth Third is incorrect to assert that state issues would be "dwarfed" by the PSA issues. Also, it is clear that state issues will not predominate over the *bankruptcy* issues, as this case has no bankruptcy issues.

Second, the Court finds that this case presents unsettled state-law questions. These questions include whether Eastern Livestock's issuance of worthless checks and holding itself out as solvent constitutes a misrepresentation for purposes of a Kentucky common law fraud claim and whether Plaintiffs' claim against Defendant Brangers is governed by a one- or two-year limitations period.

Third, as Plaintiffs correctly note, this case is a "related to" proceeding. Fourth, an efficient administration of the bankruptcy estate will not be impacted if the Court abstains from adjudicating this action, as Eastern Livestock's bankruptcy proceedings involve liquidating the estate's assets. If Plaintiffs were to prevail, the net impact on the estate would be a possible increase in Fifth Third's indemnity claim against Eastern Livestock. This would not disrupt the administration of the estate.

Fifth, while the Court finds that this case could affect the size of Fifth Third's indemnity claim, it also finds that there is a low degree of relatedness between it and the bankruptcy. The total claims against the bankruptcy estate exceed $60 million and Plaintiffs here are seeking under $1

29

million. Viewed in light of this fact, the *degree* of relatedness is low. Sixth, there are other related proceedings commenced in state courts. See, e.g., Cloyd, 2012 WL 1906481. While forum shopping concerns weigh against abstention because it is Plaintiffs who are pursuing Fifth Third outside the bankruptcy court, the balance of the factors weighs in favor of abstention and remand.

### III. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Abstention and Remand [DN 21] is **GRANTED**. **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Enlargement of Page Limit for their Reply [DN 35] is **GRANTED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

April 4, 2013

cc:    counsel of record
       Allen Circuit Court

30